**Affirmed and Memorandum Opinion filed January 15, 2012.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00028-CV

### JOSE CISNADO AND JUANITA J. CISNADO, Appellants

### V.

### SHADY OAK ESTATES HOMEOWNER'S ASSOCIATION, INC., Appellee

**On Appeal from the 240th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 08-DCV-164309**

## M E M O R A N D U M   O P I N I O N

Appellants Jose and Juanita J. Cisnado challenge the trial court's order enforcing the parties' mediated settlement agreement, dismissing the underlying lawsuit with prejudice, and awarding attorney's fees to appellee Shady Oak Estates Homeowner's Association, Inc. ("Shady Oaks"). In five issues, the Cisnados assert that they were entitled to rescind the settlement agreement, that the trial court abused its discretion by failing to require the parties to mediate their dispute regarding the settlement agreement, that the trial court abused its discretion by

awarding Shady Oaks attorney's fees, and that there is no contractual or statutory basis for the award of attorney's fees to Shady Oaks. We affirm.

## BACKGROUND

This dispute arose out of Shady Oaks' attempted enforcement of deed restrictions against the Cisnados. Shady Oaks filed suit against the Cisnados, seeking enforcement of certain deed restrictions and a temporary injunction. The Cisnados answered and filed counterclaims against Shady Oaks. On October 14, 2010, the parties attended mediation, which resulted in a mediated settlement agreement resolving the underlying lawsuit between the parties. The parties were to take several actions pursuant to the settlement agreement. As is relevant here, the settlement agreement provided:

- Shady Oaks would pay the Cisnados $2,500.00 on or before November 1, 2010.
- The lawsuit would be resolved by an agreed order of dismissal with prejudice, with costs taxed to the party incurring them.
- All parties agreed to release and discharge one another from any and all claims, demands, suits, et cetera arising from or related to the events and transactions the subject matter of the lawsuit, with no exceptions.
- Counsel for Shady Oaks would deliver any settlement documents to the Cisnados by October 24, 2010. The parties agreed to cooperate with each other in drafting and executing any additional documents "as are reasonably requested or required to implement the terms and spirit of this agreement. Plaintiff shall return the executed documents within ten (10) days after receipt of same."
- If disputes arose with regard to the interpretation or performance of the agreement, the parties agreed to attempt to resolve them by telephone conference with the mediator who facilitated the settlement agreement. If the phone conference failed to resolve the dispute, the parties agreed to return for one-half day of additional mediation. Any party refusing to mediate "may not recover attorney[']s fees or costs in any litigation brought to construe or enforce this agreement."

2

- "This agreement is made in accordance with Rule 11 of the Texas Rules of Civil Procedure; and, as such, may be filed of record in Court before seeking enforcement."
- The agreement was not subjection to revocation.

On October 19, 2010, counsel for Shady Oaks sent, via email, a joint notice of non-suit with prejudice to the Cisnados' counsel. The Cisnados did not return the executed documents within ten days as specified by the settlement agreement. Counsel for Shady Oaks emailed the Cisnados' counsel on numerous occasions regarding finalizing the joint notice of non-suit and dismissing the case: the record contains emails dated January 6, 2011, February 22, 2011, March 15, 2011, March 28, 2011, April 27, 2011, and May 24, 2011 inquiring about the status of the non-suit. The non-suit was never signed by the Cisnados, and their attorneys did not respond to Shady Oaks' inquiries. Shady Oaks did not send the $2,500.00 check to the Cisnados by November 1, 2010 as specified by the agreement.

On June 6, 2011, the Cisnados' counsel notified Shady Oaks in writing that the Cisnados were "rescinding" the settlement agreement. In this letter, the Cisnados' counsel stated that Shady Oaks had breached the settlement agreement by failing to pay the Cisnados as specified by the agreement on or before November 1, 2010. This letter concluded, "The Cisnados, being the non-breaching parties, have therefore elected the remedy of cancellation and rescission and do hereby declare such agreement rescinded."

Shady Oaks responded to this letter by sending a check to the Cisnados' counsel on June 8, 2011. This check was dated October 22, 2010, a few days after Shady Oaks had originally emailed the Cisnados' counsel the non-suit documents. The Cisnados did not respond to this correspondence. Shady Oaks filed a motion to enforce the settlement agreement on June 9, 2011, in which it stated that, more than seven months after the parties had reached a mediated settlement agreement,

3

the Cisnados had purportedly rescinded the agreement. Shady Oaks contended that the Cisnados could not rescind the agreement because they had failed to (a) cooperate in executing the settlement agreement; (b) execute the non-suit within ten days of its receipt on October 19, 2010; or (c) contact the mediator when a dispute arose regarding the interpretation or performance of the agreement. Shady Oaks requested that the trial court enforce the settlement agreement because the Cisnados had breached the agreement first and had waived any claim for equitable rescission by their inaction in the face of Shady Oaks' repeated attempts to settle the dispute.

The Cisnados responded on September 1, 2011, asserting that Shady Oaks had failed to (1) keep the settlement agreement and their counsels' tax identification number confidential; (2) tender the $2,500.00 payment to the Cisnados on or before November 1, 2010 as required by the agreement, which they asserted was a condition precedent to execution of the non-suit; and (3) contact the mediator regarding any concerns Shady Oaks had about tendering payment to the Cisnados before the Cisnados executed the settlement documents. The Cisnados also asserted that Shady Oaks stated in its motion to enforce that it had mailed them only a "copy of the check" and that the "document" provided was "stale-dated" and could not have been negotiated.

The trial court heard Shady Oaks' motion to enforce on September 1, 2011. Counsel for both Shady Oaks and the Cisnados appeared. Counsel for the Cisnados stipulated that the above described emails from Shady Oaks' counsel, as well as the non-suit documents, had been received. The Cisnados' counsel stated that the Cisnados had not executed the non-suit because they were awaiting receipt of the $2,500.00. Counsel for the Cisnados agreed that the Cisnados had not responded to any of Shady Oaks' inquiries regarding the non-suit documents.

4

At the conclusion of the hearing, the court orally found and ordered as follows:

> Based on the stipulations and after argument of Counsel, the court finds that the settlement agreement dated October 14, 2010, remains an enforceable document. Further that the [HOA is] ordered to stop payment on the outstanding $2,500 check, which is dated October the 22, 2010, immediately and to reissue same on or before Wednesday, September 7, 2011 . . . .
>
> [Counsel for the Cisnados] is ordered to immediately execute the outstanding joint notice of non[-]suit on or before Thursday, September the 8, 2011, and immediately transmit the original [to] the Fort Bend County District clerk . . . via fax and simultaneously mail the original document with the original signature on it . . . certified, return receipt requested.
>
> The $2,500 check is not to be deposited or negotiated until [counsel for the Cisnados] complies with the order to execute the non[-]suit and transmit same as ordered above.
>
> Upon receipt of the executed joint notice of non[-]suit, executed by all required parties, the Court will order non[-]suit putting a stake through the heart of this particular litigation.
>
> Have I - - and I'm not awarding any additional costs or fees.

The next day, Shady Oaks mailed the Cisnados, via their counsel, a check for $2,500.00, pursuant to the trial court's order. Shady Oaks also enclosed another copy of the joint notice of non-suit signed by its counsel. The Cisnados' counsel failed to execute the non-suit.

On September 30, 2011, Shady Oaks filed a motion to enforce the settlement and for sanctions. In this motion, Shady Oaks asserted that the Cisnados had failed to comply with the court's orders. Shady Oaks further stated that the Cisnados' counsel had advised it that the Cisnados "ha[d] no intention of complying with the Court's Rulings and Order." Shady Oaks sought full enforcement of the trial court's September 1 rulings, including an order dismissing the underlying case

with prejudice. Shady Oaks further sought attorney's fees from the Cisnados for "having to come back to this court for enforcement of the settlement agreement and the preparation and presentation of this Motion. . . . Reasonable attorney's fees through the hearing on this matter total at least $2,880.00."

The Cisnados responded on October 6, 2011, acknowledging that the court had ordered their counsel to execute the non-suit documents. They further stated in the motion that they had instructed their counsel "NOT to execute any documents." The Cisnados stated in their motion that they were "being denied their day in court." They argued that they promptly performed under the settlement agreement, but Shady Oaks did not timely tender the $2,500.00 as required by the agreement. They further asserted that Shady Oaks allowed other property owners to commit the same violations of the deed restrictions for which Shady Oaks had sued the Cisnados. They asked that the trial court deny Shady Oaks' motion.

The trial court heard the second motion to enforce on October 6, 2011. At this hearing, the Cisnados and a Shady Oaks' representative, as well as counsel for both parties, were present. The Cisnados' counsel stipulated that Shady Oaks had complied with the trial court's September 1, 2011 orders. Counsel for the Cisnados informed the trial court that he had explained to the Cisnados that they could be held in contempt for failing to comply with the trial court's orders.

Additionally, the following exhibits were entered into evidence: the record from the hearing on September 1, 2011; the mediated settlement agreement; several letters from Shady Oaks' counsel following the September 1st hearing regarding the Cisnados' lack of compliance with the court's orders; and several affidavits regarding Shady Oaks' attorney's fees. Shady Oaks presented

6

testimonial and affidavit evidence of the attorney's fees it had incurred since the trial court's September 1st orders, which totaled $3,435.00.

Counsel for the Cisnados called Juanita Cisnado to testify at this hearing to explain her lack of compliance with the court's prior orders. She stated that, after her counsel had advised her of the possible ramifications of refusing to allow execution of the notice of non-suit, she instructed her counsel not to sign the document. She explained that she believed she and her family were being "spied on" and "picked on" by Shady Oaks because they are Hispanic. She testified that she had complied with the terms of the settlement agreement by abiding by the deed restrictions, even though many others in the neighborhood did not. She explained that she had not permitted her counsel to sign the document that would have resulted in dismissal of the suit because Shady Oaks did not send her family the $2,500.00 check as the settlement agreement required.

The trial court informed Mrs. Cisnado that Shady Oaks had, since the last hearing, provided her counsel with a check for $2,500.00. Mrs. Cisnado acknowledged awareness of the court's orders that would have resulted in her family's getting their money and the lawsuit's being dismissed. The trial court explained that her actions could result in further fees and costs being assessed against her:

> THE COURT: All right. Let me just -- Mrs. Cisnado, do you understand that the hearing we had -- the hearing that -- you weren't here at the hearing on September 1st in this courtroom?
>
> THE WITNESS: No, sir.
>
> THE COURT: All right. The lawyers were here and they spent some time arguing back and forth to give me their position on the facts. And I've -- I wrote down two or three pages of notes of what they said so that I could enter an order that tried to resolve this case.

7

Since your lawyers did not do what I told them to do based on that September the 1st hearing and, you know, they didn't appeal that September the 1st hearing, that I know of, they just haven't done it because you told them not to sign the non[-]suit, do you understand that that keeps this whole litigation still going?

THE WITNESS: Yes, sir.

THE COURT: And it may -- it may result in the[re] being additional attorney's fees charged to you and your husband more than what was initially a part of the lawsuit back in 2010, that the longer the case goes on the more expensive it gets. I mean, you understand that?

THE WITNESS: I understand that. I just want my -- I just want to go to -- to -- back to mediation and if I could have my day in court, too, I mean, that's fine, too. It's just not fair.

THE COURT: I see. Okay. Thank you very much. I appreciate you coming in here.

After the close of evidence, counsel for Shady Oaks summarized Shady Oaks' position as follows:

The issue before this Court is quite simply whether the September 1st, 2011 order was complied with. It was not. They can explain why they have not or they can attempt to explain to the Court the dilemma that they find themselves in, but the fact remains there is a breach of the agreement. They have violated the Court's order. There has been over $3,435 in attorney's fees incurred by virtue of that breach, and Shady Oaks . . . is entitled to this case being dismissed. An award of $3,435 at least in attorney's fees today and such other relief as the Court deems appropriate.

The Cisnados' counsel closed by asserting that (1) the court could compel them to sign the non-suit or dismiss the case, (2) the trial court's September 1 orders, while enforceable, were not appealable by a writ of mandamus because they were not in writing,[1] (3) the attorney's fees sought were excessive, and (3) Shady Oaks was not

---

[1] We note that this contention is incorrect. Texas Rule of Appellate Procedure 52.3 provides that the appendix to a petition for a writ of mandamus must conain "a certified or sworn

8

alleging a breach of the agreement but a violation of the court's orders. Finally, he requested that Shady Oaks' attorney's fees be denied and that the case be sent back to mediation per the settlement agreement.

After hearing the evidence and argument of counsel, the trial court granted Shady Oaks' motion. The court ordered the lawsuit dismissed with prejudice and awarded attorney's fees of $2,880.00 to Shady Oaks, to be assessed against the Cisnados only, not their counsel. On the same day, the trial court signed an order to that effect. The order stated that it was "a final judgment." The order did not address the $2,500.00 owed to the Cisnados under the terms of the settlement agreement.

On November 7, 2011, the Cisnados filed a combined motion to modify the judgment and motion for new trial. In this motion, the Cisnados requested that the trial court (1) modify the judgment to specify the basis for the award of attorney's fees, (2) set aside the order and grant a new trial because the trial court erroneously awarded attorney's fees to Shady Oaks, or (3) grant a new trial because the settlement agreement required mediation of the dispute. This motion was overruled by operation of law, and this appeal of the trial court's October 6, 2011 judgment timely ensued.

## ANALYSIS

### A.    The Settlement Agreement

In their first three issues, the Cisnados challenge the trial court's September 1, 2011 orders enforcing the mediated settlement agreement. First, they assert that

copy of any order complained of, *or any other document showing the matter complained of*." Tex. R. App. P. 52.3(j)(1)(A) (emphasis added); *see also In re Bledsoe*, 41 S.W.3d 807, 811 (Tex. App.—Fort Worth 2001, orig. proceeding) (stating that mandamus relief may be based on oral ruling if the ruling is a "clear, specific, and enforceable order that is adequately shown by the record").

they were entitled to rescind the agreement, which they did prior to the trial court entering "judgment" on the settlement agreement. Second, they contend that, because they rescinded the agreement, the trial court was not permitted to enter "judgment" on the agreement without a trial on the merits. Finally, the Cisnados argue that the trial court abused its discretion by entering "judgment" on the agreement without first referring parties back to mediation as required by the settlement agreement.

The Cisnados misconstrue the basis for the trial court's judgment. The trial court's October 6, 2011 judgment was entered on Shady Oaks' motion to enforce the court's September 1st orders and motion for sanctions,[2] not on the mediated settlement agreement. The trial court dismissed the underlying lawsuit with prejudice to effectuate its September 1, 2011 orders enforcing the settlement agreement, with which the Cisnados had failed to comply. The trial court additionally ordered the Cisnados to pay Shady Oaks attorney's fees as sanctions for their failure to comply with its prior orders. Further, the judgment does not address either the $2,500.00 settlement payment to the Cisnados or the release of

[2] Shady Oaks' motion to enforce is entitled "Motion to Enforce Settlement and Motion for Sanctions." The motion focuses on the Cisnados' failure to comply with the trial court's September 1, 2011 orders:

> The Cisnados and their counsel have chosen to disregard the Court's findings, rulings and Order—all of which are unambiguous. Shady Oaks thus seeks full enforcement of the Court's findings and rulings made at the September 1, 2011 hearing. SHADY OAKS seeks an order:
>
> - Dismissing the underlying case with prejudice
> - Ordering the Cisnados and/or their counsel to pay attorneys' fees to SHADY OAKS
> - Such other and further Relief the Court deems appropriate[.]

Further, at the start of the October 6, 2011 hearing, the trial court stated that the parties were present on Shady Oaks' "motion to enforce the ruling" that was made on September 1, 2011. As discussed above, the focus of the hearing was on the Cisnados' failure to comply with the trial court's orders.

claims discussed above, which also indicates that it is not a judgment on the settlement agreement.[3]

The Cisnados did not challenge the trial court's September 1, 2011 orders. These orders could have been challenged through a writ of mandamus proceeding. *Cf. In re Lane-Valente Inds. (Nat'l), Inc.*, No. 01-12-00685-CV, 2012 WL 5192700, at *1 (Tex. App.—Houston [1st Dist.] Oct. 18, 2012, orig. proceeding) (mem. op., per curiam) (denying mandamus relief to relator challenging trial court's order denying its motion to rescind and replace parties' settlement agreement); *In re Clayton*, No. 14-10-00139-CV, 2010 WL 3294322, at *1 (Tex. App.—Houston [14th Dist.] Aug. 11, 2010, orig. proceeding) (mem. op., per curiam) (denying mandamus relief to relator requesting that order granting motion to enforce mediated settlement agreement be set aside and that parties be ordered to return to mediation). Instead, the Cisnados simply chose not to comply with these orders. And the Cisnados have failed to perfect an appeal from the trial court's September 1, 2011 orders. *See* Tex. R. App. P. 25.1; 26.1 (providing that to perfect an appeal, a notice of appeal must contain the date of the judgment *or order* appealed from and must be filed within thirty days if no appropriate post-judgment motion has been filed and ninety days if an appropriate post-judgment motion has been filed).[4] Accordingly, we overrule the Cisnados' first three issues.

---

[3] There were also several other handwritten terms on the mediated settlement agreement with which the Cisnados were to comply. Their failure to comply with these terms would result in certain violations and monetary penalties payable to Shady Oaks. None of these terms were included in the trial court's final judgment.

[4] An amended notice of appeal may be filed in certain circumstances. *See* Tex. R. App. P. 25.1(f). However, in this case, the Cisnados' notice of appeal was filed on January 4, 2012, well past the deadline for perfecting an appeal from the September 1, 2011 order.

## B.    Attorney's Fees

In issue four, the Cisnados assert that the trial court abused its discretion by awarding Shady Oaks attorney's fees because the settlement agreement explicitly provides that any party who refuses to mediate may not recover attorney's fees in an action to enforce the agreement.  In their fifth issue, they argue that attorney's fees may not be awarded (a) on a Rule 11 enforcement motion to a party that has not complied with contractual conditions precedent to recovery of those fees and (b) when neither the settlement agreement nor any statute expressly provides for their award.

The trial court did not award attorney's fees based on the settlement agreement.  Rather, Shady Oaks requested attorney's fees in its motion to enforce the trial court's September 1st orders and combined motion for sanctions.  It sought its fees only for preparation and presentation of this motion, and the trial court's award of fees was limited to these fees.  Thus, the trial court awarded attorney's fees to Shady Oaks as a sanction against the Cisnados for their failure to comply with the trial court's September 1, 2011 order.  We therefore combine these issues and construe them as a challenge to the trial court's decision to award Shady Oaks its attorney's fees as sanctions.

Trial courts possess inherent power to impose sanctions for bad faith abuse of the judicial process even when the specific conduct is not covered by a rule or statute.  *Ezeoke v. Tracy*, 349 S.W.3d 679, 685 (Tex. App.—Houston [14th Dist.] 2011, no pet.).  We review a trial court's decision to impose sanctions under its inherent authority for an abuse of discretion.  *See id.*  The trial court's inherent power includes the authority to appropriately sanction for failure to comply with a valid court order incident to one of its core functions, such as hearing evidence, deciding issues of fact, deciding questions of law, entering judgments, and

12

enforcing judgments. *See id.* The trial court entered its September 1st orders enforcing the mediated settlement agreement after deciding both issues of fact and questions of law. Thus, the trial court issued these orders incident to exercise of its core functions.

Based on the record before us, we conclude that the trial court did not abuse its discretion in awarding Shady Oaks its attorney's fees as sanctions under its inherent authority.[5] Accordingly, we overrule the Cisnados' fourth and fifth issues.

### CONCLUSION

For the foregoing reasons, we have overruled the Cisnados' five issues. We affirm the trial court's judgment.


/s/    Adele Hedges
Chief Justice

Panel consists of Chief Justice Hedges and Justices Brown and Busby.

---

[5] The Cisnados do not challenge the trial court's failure to find bad faith on their part before imposing these sanctions. *See Ezeoke*, 349 S.W.3d at 686 (determining that sanctions order could not be upheld under trial court's inherent authority because it did not include findings that sanctioned party's conduct significantly interfered with court's legitimate exercise of core functions). In fact, their only mention of the attorney's fees as sanctions in their brief is as follows:

> If the attorney's fees were awarded as a sanction, then they were an abuse of discretion for a court may not impose sanctions under rule providing for sanctions against party or attorney who signed pleading or motion that is groundless and brought in bad faith or groundless and brought for purpose of harassment except for good cause, the particulars of which must be stated in the sanction order. No good cause is stated in the Final Judgment.

The attorney's fees at issue here were not awarded as sanctions under Texas Rule of Civil Procedure 13, providing that sanctions may be imposed for signing groundless pleadings or motions brought in bad faith or for purposes of harassment. Tex. R. Civ. P. 13.